IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TANNER ROUBIDEAUX-DAVIS,

    **Plaintiff,**

    v.                                      CASE NO. 25-3051-JWL

HUTCHINSON CORRECTIONAL
FACILITY,

    **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On April 16, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC. The Court noted that Plaintiff failed to name a proper defendant. The Court also granted Plaintiff an opportunity to file an amended complaint to cure the deficiencies.

Plaintiff filed an Amended Complaint (Doc. 6), and the Court entered a Memorandum and Order (Doc. 7) finding that that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered KDOC officials to prepare and file a *Martinez* Report. The Court's Memorandum and Order provided that "[o]nce the Report has been received, the Court can properly screen Plaintiff's Amended Complaint under 28 U.S.C. § 1915A."

1

(Doc. 7, at 3.) The *Martinez* Report (Docs. 10, 12) (the "Report") has now been filed. The Court's screening standards are set forth in the Court's MOSC.

## I. Nature of the Matter before the Court

Plaintiff alleges that on March 29, 2023, he was sexually assaulted at the HCF low-medium camp by an inmate ("Johnson") that was a known predator. (Doc. 6, at 3.) Plaintiff alleges that the inmate should not have been in a low-medium camp because he had several similar incidents on record. *Id*. Plaintiff alleges that he has attempted to obtain the name of who was in charge of placements at that time and was denied that information. Plaintiff also sought to obtain information of past incidents by the known predator and was unable to obtain that information. Plaintiff was told that he needed to subpoena the information. *Id*.

Plaintiff alleges an Eighth Amendment violation based on a failure to protect him. Plaintiff names as defendants: Warden Dan Schnurr; and (fnu) (lnu) employees. Plaintiff seeks compensatory damages.

## II. The Report

The Report provides that Plaintiff was the victim of a sexual assault by inmate Johnson at 1:22 a.m. on March 29, 2023. (Doc. 10, at 6.) The Report indicates that investigators were immediately involved. *Id*. The Report describes the incident as follows:

> Master Sergeant Anderson was making a security round of the living unit at the east unit of the Hutchinson Correctional Facility in which the plaintiff was housed and observed inmate Johnson in the plaintiff's living area acting oddly. Johnson was moved to another area and security video was reviewed. (Exhibits 6 and 11)
> The video showed that Johnson first manipulated plaintiff's genitals and then performed oral sex on plaintiff, who was asleep and had to be awakened to be questioned about the event. (Exhibits 6, 10, 11 and 29)
> The PREA investigator followed his PREA standards for adult prisons and created the required checklist at 6:25 a.m. on March 29, 2023. (Exhibits 6, 12 and 13)

> Plaintiff indicated he had no awareness of oral sex being performed on him and did not feel any threat that would make him want to be moved from his east unit housing location. (Exhibits 6 and 11)
> It later developed that the victim had been drinking alcohol and was unconscious due to alcohol intoxication. (Exhibits 6, 11 and 15)

*Id*. at 6–7.

Johnson was moved to the maximum-security central unit at HCF, was issued a disciplinary report for his actions, and pled guilty. *Id*. at 7. The case was referred to the Reno County District Attorney for prosecution. *Id*. (citing Exhibits 6, 10 and 20). "Plaintiff was seen by medical staff and behavioral health that morning and was allowed to remain at the east unit after waiving protective custody." *Id*. (citing Exhibits 6, 9 and 11). Investigators conduced a sexual assault incident review on April 13, 2023, and on April 25, 2023, the PREA investigator notified Plaintiff that the allegations against Johnson were substantiated. *Id*. (citing Exhibits 6, 11, 14, and 15). "As part of the PREA Retaliation Monitoring Checklist the PREA investigator spoke with plaintiff four times on March 29, 2023, May 2, 2023, June 12, 2023, and July 17, 2023." *Id*. (citing Exhibits 6, 16, 17, 18, and 19). The Report provides that:

> During the investigation, plaintiff disclosed that Johnson had talked with him about sexual matters, but that the victim indicated he was not interested in any such things with Johnson. Other inmates living in that housing area were also questioned and one indicated Johnson had briefly touched him on the outside of his jeans while he was sleeping. (Exhibits 6 and 11)
> If an inmate feels threatened or pressured about sexual matters, he can always tell any staff member or, to remain anonymous if desired, he can use the facility phone to report any PREA type issues by dialing #50 and leaving a message. There is no indication that plaintiff performed either action before the assault occurred. (Exhibit 6)

*Id*.

Johnson is an inmate legally incarcerated in KDOC custody, and presently housed at the Oswego Correctional Facility. *Id*. at 4.  The Report provides that:

> Johnson has 11 active felony convictions dating back to 1983. The only apparently sexually motivated offense is a Rape charge from 1983. Johnson has been in and out of custody of the Secretary many times since January of 1979. Over that time he has had eight disciplinary convictions. The first six were in 2004 or earlier. The seventh one was in 2023 and was the sexual activity with plaintiff. The last was in August of 2023 for a lewd act of Johnson exposing himself. [Johnson] was 66 years old at the time these last two disciplinary violations occurred. (See Kasper Sheet Exhibit 3)
>
> * * * *
>
> Regarding Johnson's custody classification as low medium and his housing location at the medium security east unit of the Hutchinson Correctional Facility, Allyson Agnew, Case Management and Re-Entry Administrator, determined that the custody and housing classification for both the plaintiff and for Johnson were correct when they were made before the event of March 29, 2023. (Exhibit 7)
> Johnson was always managed as a sex offender because of his 1983 Rape conviction. He was classified as low medium from 2017 and retained that custody classification at subsequent reviews. Mr. Johnson was moved to the east unit of the Hutchinson Correctional Facility on April 11, 2022,[1] and remained there until his sexual assault on inmate Tanner Roubideaux-Davis, KDOC #116770, at which time he was immediately reclassified as high medium and placed in special management housing. On August 16, 2024, Mr. Johnson's custody classification was returned to low medium and he now is housed at the Oswego Correctional Facility. (Exhibits 3 and 7)

*Id*. at 4, 8.

Regarding Plaintiff's custody classification, the Report provides that:

> When Plaintiff first returned to custody on November 15, 2022, he was classified as a high-medium custody while at the Reception and Diagnostic Unit at the El Dorado Correctional Facility. Plaintiff was always managed as a sex offender due to his conviction in Rice

---

[1] Exhibit 3 shows the KDOC Physical Location History(s) for Johnson and shows that he moved to Hutchinson CF-East on November 22, 2021.  (Doc. 10–3, at 3.)  Allyson Agnew's Affidavit states that Johnson was moved to the east unit at HCF on November 11, 2021.  (Doc. 10–7, at 1.)

> County case 16 CR 100 for engaging in criminal sodomy with a child. Plaintiff arrived at the Hutchinson Correctional Facility (HCF) on January 30, 2023, as high medium. His custody level was modified to low medium on or before February 17, 2023, and he was transferred to the east unit of HCF. Plaintiff's housing location and custody level changed multiple times due to him being convicted of committing fifteen disciplinary violations between May 13, 2023, and August 26, 2023. Plaintiff was released from custody again on November 9, 2023, (Exhibits 1 and 7)

*Id*. at 8.

The Report also provides that Darcie Holthause, the record keeper in the Topeka central office for the KDOC, "did not find any property claim[2] appeals, grievance appeals or emergency grievances from plaintiff regarding claims associated with him being sexually assaulted by another inmate at the Hutchinson Correctional Facility on March 29, 2023. She specifically does not find any appeal from plaintiff to the secretary of grievance BA00018982." *Id*. at 5–6 (citing Exhibit 8).

The Report states that unless specific issues arise, Warden Dan Schnurr is not involved in determining an inmate's custody level or with their housing locations. *Id*. at 9. Warden Schnurr was not involved in any decisions involving Plaintiff or Johnson's custody or housing location.[3] *Id*.

**III. Discussion**

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))).

---

[2] The Affidavit submitted by Darcie Holthaus provides that she searched the records "for any personal injury claims filed by [Plaintiff] regarding the assault by another inmate on March 29, 2023, and found no related personal injury claim had been appealed to the Secretary of Corrections by [Plaintiff]." (Doc. 10–8, at 1–2.)

[3] Warden Schnurr's Affidavit is included in the Report and provides that he does not "have any direct involvement with fixing custody levels of inmates nor with housing locations and did not have any direct involvement in determining either matter as it involved plaintiff's case." (Doc. 10–4.)

"This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Id.* (quoting *Farmer*, 511 U.S. at 833).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Hooks*, 983 F.3d at 1204 (citing *Strain*, 977 F.3d at 992). Plaintiff must establish that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain*, 977 F.3d at 990 (citations and alteration omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id.* (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id.* (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)). A prison official may be found free from liability if they responded reasonably to the risk. *See Hooks*, 983 F.3d at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm

ultimately was not averted")). "[P]rison officials who act reasonably cannot be found liable." *Id*. (citing *Farmer*, 511 U.S. at 845).

Nothing in the written Report suggests that KDOC officials or staff were aware of a risk to Plaintiff prior to the incident. Johnson was managed as a sex offender based on a 1983 rape. The only disciplinary reports received by Johnson prior to the incident with Plaintiff were from 2004 and earlier. (Doc. 10–3, at 6.) None of these prior disciplinary reports mention sexual activity. *Id*. They are listed as: Violation of Published Orders (May 25, 1999); Unauthorized Dealing or Trade (Sept. 21, 2001); Violation of Published Orders (Jan. 4, 2004); Taking W/O Permission (Jan. 4, 2004); Debt Adj or Collection Proh. (Apr. 26, 2004); and Threaten or Intim Any Person (May 11, 2004). *Id*. The disciplinary report for the incident involving Plaintiff is listed as "Sexual Activity" and was issued on March 29, 2023. *Id*.

The Report includes three videos showing camera footage on the day of the incident—March 29, 2023. Camera footage from 12:24 a.m. that day shows Johnson getting up several times during the six-minute video to go over to Plaintiff's bunk to look at Plaintiff while Plaintiff is sleeping. At one point it appears that he touches Plaintiff on the head. The second video contains camera footage starting at 12:52 a.m. that day. In that 5-minute video it appears that Johnson sexually assaults Plaintiff, but ducks and backs away when Plaintiff moves. The third video contains camara footage starting at 1:04 a.m. and captures an approximately 17-minute sexual assault by Johnson while Plaintiff is asleep.

There were also videos submitted showing Johnson stalking Plaintiff prior to the incident. The camera footage is contained on two videos from March 7, 2023, one video from March 15, 2023, and one video from March 18, 2023. The videos show Johnson stalking Plaintiff while he sleeps. Johnson stares at Plaintiff from Johnson's sleeping area, goes over to Plaintiff's bunk

multiple times to look, and touches Plaintiff on Plaintiff's back, shoulder, arm, and head. Based on the "date modified" on the videos, it appears that they may not have been viewed until after the incident and as part of the KDOC's investigation. The KDOC should supplement the Report to indicate whether the camera footage is monitored in real time, and whether or not anyone viewed the stalking videos prior to the incidents on March 29, 2023.

**IV. Plaintiff's Objection to the Order at Doc. 13**

On August 21, 2025, the Court entered an Order (Doc. 13) granting the KDOC's Motion to File Under Seal, Conventionally and for a Protective Order for Exhibits to Investigative Report Prepared Pursuant to "Martinez v. Aaron" (Doc. 11). The KDOC sought to file Exhibits 22, 24, and 27 under seal. The motion provided that the exhibits contain internal policies and procedures designated as "Staff Read Only" and will not be provided to Plaintiff for security reasons. The Court granted the motion. These exhibits will only be made viewable by attorneys associated with this action, and those attorneys were ordered not to provide these exhibits to Plaintiff or to discuss the contents with anyone other than attorneys in this case.

Plaintiff has filed an objection (Doc. 14), arguing that he should have access to Exhibits 22, 24, and 27 because he is acting as his own attorney. The policies are designated as "Staff Read Only" for security purposes, and they were not material to the Court's findings in this Memorandum and Order.

The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

8

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007).

The Court overrules Plaintiff's objection due to safety concerns, and because the exhibits were not material to the Court's findings in this Memorandum and Order.

## V. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Unless the stalking videos were viewed in real time or at any time prior to the incident, there is nothing to suggest that KDOC officials were aware of a risk to Plaintiff.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why his Eighth Amendment claim should not be dismissed. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **October 14, 2025,** in which to respond to the Report at Doc. 10, and to show good cause, in writing to the undersigned, why Plaintiff's Eighth Amendment claim should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED THAT** the Interested Party should supplement the Report as indicated in this Memorandum and Order by **September 29, 2025.**

**IT IS FURTHER ORDERED THAT** Plaintiff's objection at Doc. 14 is **overruled.**

**IT IS SO ORDERED**.

Dated September 15, 2025, in Kansas City, Kansas.

                                              **S/ John W. Lungstrum**
                                              JOHN W. LUNGSTRUM
                                              UNITED STATES DISTRICT JUDGE