IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TANNER ROUBIDEAUX-DAVIS,

       **Plaintiff,**

       v.                              CASE NO.  25-3051-JWL

HUTCHINSON CORRECTIONAL
FACILITY,  et al.,

       **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF").  The Court granted Plaintiff leave to proceed in forma pauperis.

### I.  Background

On April 16, 2025, the Court entered a Memorandum and Order to Show Cause (Doc. 5) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC.  The Court noted that Plaintiff failed to name a proper defendant.  The Court also granted Plaintiff an opportunity to file an amended complaint to cure the deficiencies.

Plaintiff filed an Amended Complaint (Doc. 6), and the Court entered a Memorandum and Order (Doc. 7) finding that that the proper processing of Plaintiff's claim could not be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court ordered KDOC officials to prepare and file a *Martinez* Report.  The Court's Memorandum and Order provided that "[o]nce the Report has been

received, the Court can properly screen Plaintiff's Amended Complaint under 28 U.S.C. § 1915A."
(Doc. 7, at 3.) The *Martinez* Report (Docs. 10, 12) (the "Report") was filed, and on September 15,
2025, the Court entered a Memorandum and Order (Doc. 16) ("M&O") ordering Plaintiff to show
good cause why his Eighth Amendment claim should not be dismissed for the reasons set forth in
the M&O. This matter is before the Court on Plaintiff's response (Doc. 18).

## II.  Amended Complaint

Plaintiff's allegations are set forth in detail in the M&O. In summary, Plaintiff alleges an
Eighth Amendment violation based on the failure to protect him on March 29, 2023, when he was
sexually assaulted by inmate Johnson at HCF. Plaintiff names the Warden and unidentified
employees as defendants and seeks compensatory damages.

## III.  The Report

The Court reviewed the Report, which provides that Plaintiff was the victim of a sexual
assault by another inmate at 1:22 a.m. on March 29, 2023. (Doc. 10, at 6.) The Report indicates
that an officer making rounds discovered inmate Johnson acting oddly in Plaintiff's living area,
removed the inmate to another area, and proceeded to review security video. The Report indicates
that investigators were immediately involved. *Id*. Plaintiff was asleep during the incident and had
to be awakened to be questioned about the event. The PREA investigator followed his PREA
standards for adult prisons and created the required checklist at 6:25 a.m. on March 29, 2023.

The inmate was moved to the maximum-security central unit at HCF, was issued a
disciplinary report for his actions, and pled guilty. *Id*. at 7. The case was referred to the Reno
County District Attorney for prosecution. *Id*. (citing Exhibits 6, 10 and 20). "Plaintiff was seen
by medical staff and behavioral health that morning and was allowed to remain at the east unit
after waiving protective custody." *Id*. (citing Exhibits 6, 9 and 11). Investigators conduced a

sexual assault incident review on April 13, 2023, and on April 25, 2023, the PREA investigator notified Plaintiff that the allegations against the inmate were substantiated. *Id.* (citing Exhibits 6, 11, 14, and 15).

The Report states that unless specific issues arise, Warden Dan Schnurr is not involved in determining an inmate's custody level or with their housing locations. *Id.* at 9. Warden Schnurr was not involved in any decisions involving Plaintiff or Johnson's custody or housing location.[1] *Id.*

## IV. Findings in the M&O and Plaintiff's Response

The Court found in the M&O that nothing in the written Report suggests that KDOC officials or staff were aware of a risk to Plaintiff prior to the incident. Johnson was managed as a sex offender based on a 1983 rape. The only disciplinary reports received by Johnson prior to the incident with Plaintiff were from 2004 and earlier. (Doc. 10–3, at 6.) None of these prior disciplinary reports mention sexual activity. *Id.* They are listed as: Violation of Published Orders (May 25, 1999); Unauthorized Dealing or Trade (Sept. 21, 2001); Violation of Published Orders (Jan. 4, 2004); Taking W/O Permission (Jan. 4, 2004); Debt Adj or Collection Proh. (Apr. 26, 2004); and Threaten or Intim Any Person (May 11, 2004). *Id.* The disciplinary report for the incident involving Plaintiff is listed as "Sexual Activity" and was issued on March 29, 2023. *Id.*

The Report includes three videos showing camera footage on the day of the incident—March 29, 2023. Camera footage from 12:24 a.m. that day shows Johnson getting up several times during the six-minute video to go over to Plaintiff's bunk to look at Plaintiff while Plaintiff is sleeping. At one point it appears that he touches Plaintiff on the head. The second video contains

---

[1] Warden Schnurr's Affidavit is included in the Report and provides that he does not "have any direct involvement with fixing custody levels of inmates nor with housing locations and did not have any direct involvement in determining either matter as it involved plaintiff's case." (Doc. 10–4.)

camera footage starting at 12:52 a.m. that day. In that 5-minute video it appears that Johnson sexually assaults Plaintiff, but ducks and backs away when Plaintiff moves. The third video contains camara footage starting at 1:04 a.m. and captures an approximately 17-minute sexual assault by Johnson while Plaintiff is asleep.

There were also videos submitted showing Johnson stalking Plaintiff prior to the incident. The camera footage is contained on two videos from March 7, 2023, one video from March 15, 2023, and one video from March 18, 2023. The videos show Johnson stalking Plaintiff while he sleeps. Johnson stares at Plaintiff from Johnson's sleeping area, goes over to Plaintiff's bunk multiple times to look, and touches Plaintiff on Plaintiff's back, shoulder, arm, and head. The Court found in the M&O that based on the "date modified" on the videos, it appears that they may not have been viewed until after the incident and as part of the KDOC's investigation.

The KDOC supplemented the Report on September 19, 2025. (Doc. 17.) The Supplement provides that:

> Abriam W. Lakzadeh is now the supervisor of EAI, being promoted to that position on June 23, 2024. Prior to that promotion, Lakzadeh served as an EAI agent since July 29, 2019. The office has been comprised of a small number of agents and they freely discuss their cases as they are being handled. The agent who wrote the report on the assault of plaintiff is no longer employed with the Kansas Department of Corrections. Lakzadeh is familiar with the investigation as it proceeded. Lakzadeh states that all the security video attached to the Martinez report in this case, exhibit 29, was the result of viewing and copying video files after the assault occurred.
>
> Lakzadeh also indicates that there existed a security position for video viewing of content from the many security cameras at HCF. The position, when staffed, had shifts of 7 a.m. to 3 p.m. and 3 p.m. to 11 p.m.. Staff who would have been viewing the images of the many security cameras focus more on images in the maximum-security cell houses and inmate movement such as meal time or the recreation yard at the central unit of HCF. The assault occurred at 1:22 a.m. at the low medium security East Unit of HCF, so that post would not have been staffed at that late time. (Doc. 10,

p. 6) (Exhibit S-1)

      Counsel viewed the videos in Document 29 of the Martinez Report in this case and noted the following. The two videos dated 3/7/23 labeled Stalking and Stalking 2, the video dated 3/18/23 and the undated video simply labeled "Rodriguez", all appear to have been recorded during the time the inmates were sleeping and the lights were off. The three videos around the time of the assault itself, on 12:24, 12:52 and 1:04 on 3/29/23 were all taken during sleeping time with the lights off. The only video taken during day time when the video viewing post might have been manned is the video labeled "Stalking" 3/15/23. Most inmates were already out of their beds. This doesn't seem to show any inappropriate behavior by Johnson beyond checking on one inmate, and there is no indication [] that this video was viewed by a staff person assigned to view the video real time.

      Daric Suppes is the Supervisor of the IT department at HCF. He states that there are an extensive number of cameras and recording devices around the facility. The length of time a recording device will retain the content varies from unit to unit.

      Suppes explains that a portion of the video can be preserved by copying the content and saving it to a separate file. When that file is named, the date the file is created is dated under the properties tag as the date "Modified". If the file is again copied, such as for inclusion in the Martinez Report as an exhibit, the date that file is copied is preserved under the heading "Created". Every time the file is opened, that date is preserved as "Accessed" and updates every time the file is again viewed.

      Suppes continues that it may be possible to change the "Modified" date using video editing software, but he never attempted to do so. He offers his belief that the dates on the videos contained in Exhibit 29 of Martinez Report in this case accurately reflect the dates on which each part of the video was originally saved and that they do not appear to have been altered in any way. (Exhibit S-2)

(Doc. 17, at 2–3.)

The Supplement provides that "[t]here is only one video that was even preserved in what appears to be in the morning, so that it could have been viewed in real time, but it doesn't seem to show any questionable conduct on the part of Robert Johnson and there is no evidence that it was viewed in real time." *Id*. at 4.

In his response to the M&O, Plaintiff references the one video that appears to be taken in

the morning, and claims that the video was either watched in real time or "whoever was assigned to that post wasn't watching like they were supposed to do." (Doc. 18, at 1.) Plaintiff also suggests that the Court should request a report on Johnson's PREA designation from the investigation in 1983. *Id*.

## V. Discussion

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020) (quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994))). "This duty includes 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Id*. (quoting *Farmer*, 511 U.S. at 833).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a subjective component inherent in the claim"). "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Hooks*, 983 F.3d at 1204 (citing *Strain*, 977 F.3d at 992). Plaintiff must establish that the "official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain*, 977 F.3d at 990 (citations and alteration omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury*

*v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)). A prison official may be found free from liability if they responded reasonably to the risk. *See Hooks*, 983 F.3d at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")). "[P]rison officials who act reasonably cannot be found liable." *Id*. (citing *Farmer*, 511 U.S. at 845).

Plaintiff has failed to allege that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of a risk. Plaintiff has failed to allege that a defendant was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. Plaintiff's claim suggests, at most, negligence. Claims under § 1983 may not be predicated on mere negligence. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated November 4, 2025, in Kansas City, Kansas.**

S/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**